DECISION
This matter is before the Court for decision on the Plaintiffs' request for injunctive relief restraining the Defendant from harassing, intimidating and annoying Plaintiffs and from blowing dirt, dust and debris upon their property. Defendant counterclaimant, in his capacity as the maintenance manager for Congregation Jeshuat Israel, seeks similar relief as to the Plaintiffs, requesting that the Court restrain them from intimidating, yelling and swearing at him.
The evidentiary record in this matter is a most unfortunate testament to an increasing and unwelcome predicament in contemporary society ? neighbors who are unable to co-exist in harmony, or, at a minimum, in an atmosphere of civility.
The Plaintiffs, mother Sheila and adult children Wendy and Jeffrey, have, since 1983, resided at 16 Division Street in Newport, the rear of their home abutting a parking lot belonging to the Congregation Jeshuat Israel. The Plaintiffs complain that since 2007, the Defendant, while discharging his maintenance duties for the Congregation, has deliberately caused dirt and debris to enter upon their property by utilizing a leaf blower in a manner which violates Newport Zoning Ordinance § 17.96.020 prohibiting such activity. *Page 2 
The Defendant counterclaims that the Plaintiffs have likewise harassed, bothered, intimidated and annoyed him with the hurling of insults and extensive videotaping.
Mrs. Sheila Anolik first encountered the Defendant on August 29, 2004, when she claims he removed a sign from her yard which was facing the Congregation parking lot and which contained the message, "[t]his is not a ghetto ? don't fence me in." Negative interactions between the two continued on a periodic basis through June of 2007. Mrs. Anolik claimed that at various times the Defendant had: (1) hidden in her shrubbery and emerged to direct an obscene gesture at her; (2) spoke to her in a falsetto voice which instilled fear in her and her dog, Benji; (3) accelerated his leaf blower at her property boundary forcefully causing "filth" and debris to settle upon her property; (4) intimidated her and her dog by driving a large vehicle near the white gate in front of her house; and (5) made noises like a "banshee."
Plaintiff, Wendy Anolik, who installed a video system in 2004 to capture the goings-on in the parking lot, echoed her mother's testimony regarding the leaf blower. She added that he: (1) wielded a sledgehammer in a threatening manner; (2) directed disgusting, groaning noises towards her; (3) cursed her in a vile and nasty fashion while she was ironing; (4) made numerous comments regarding her rear-end and told her to call Jenny Craig; and (5) swerved at her mother while driving his truck "like a bat out of hell."
Plaintiff, Jeffrey Anolik also described unpleasant encounters and altercations with the Defendant. One such incident erupted over the Defendant's placement of a heavy chain across a parking lot the Plaintiffs previously had access to. Mr. Anolik acknowledged that he very well could have insulted the Defendant "and" probably told him to "go clean toilets and take out the garbage at the synagogue." *Page 3 
The Defendant, Asa Montgomery, has been employed as Touro's maintenance manager since 2002. He indicated that Plaintiff, Jeffery Anolik, has expressed to him a dislike for the Synagogue and the manner in which its business was conducted. The Defendant acknowledged gesturing to the Plaintiffs in a vulgar fashion but only upon provocation, for example, when he was addressed as the "Touro Toilet Boy." Defendant also explained that the Plaintiffs engaged in excessive picture taking of him and the Synagogue visitors causing him to implore Plaintiffs not to photograph his three children. According to the Defendant, there is rarely an instance where he is able to perform his duties without interference ? in the form of yelling, harassment and hurling of epithets ? from the Plaintiffs. Clumps of dirt were also thrown at the Defendant while he had been working in the parking lot.
Mr. Montgomery also located, in 2007, clipped together copies of Rabbi Mordechai Eskovitz's divorce decree scattered about the parking lot.
Rabbi Eskovitz, a rabbi of 40 years experience, has been the Rabbi and Spiritual Director of Touro Synagogue for the past twelve years. He first encountered the Plaintiff family twelve years ago when Jeffrey Anolik introduced himself and told him that he would be available for a service called "minyan" which requires the presence of a quorum of ten adult males.
Despite ensuing efforts by the Rabbi to be a kindly neighbor, the relationship between the parties precipitously deteriorated. The Rabbi describes the Plaintiff family members' behavior as insulting, abusive, threatening and "hateful" of the Synagogue. The Rabbi has been the recipient of Yiddish curses issuing from Plaintiffs and has been called a "hippocrate," a "fraud" and a "pancake rabbi."
In January, the Court conducted an evidentiary hearing regarding the placement, by Plaintiffs, in a residence window facing the Synagogue's parking lot, of a picture (entitled *Page 4 
"Diversity Rocks") of two young women in thongs, facing the viewer. The Rabbi described the poster as "very offensive," "suggestive," tantamount to "obscenity and pornography" and an "offensive affront" to the "very orthodox" patrons of the Synagogue.
Plaintiff, Wendy Anolik, acknowledged that she placed the poster in the window because she "had an epiphany while gift-shopping."
It is abundantly and painfully clear that the parties to this lawsuit have neither the ability nor inclination to co-exist in any semblance of a peaceful and tolerant environment. The "relationship" of the Plaintiffs and Defendant has deteriorated to the point of complete and literal degradation. There is absolutely no need for any of the Plaintiffs to have any contact with the Defendant, or for him to have any contact with them whatsoever. Therefore, the opposing parties are enjoined from having any contact, of any nature, directly or indirectly, with each other. The prohibited behavior includes speech, bodily gestures, facial contortions and written or pictorial messages.
The Plaintiffs' complaint regarding the violations of City Ordinances with the use of the leaf blower can not be resolved in the absence of reportage to the Newport Police Department. The City Ordinance requires that complainants report the alleged violation simultaneously with its occurrence. This results, if warranted, with the offender being cited by the police who are in a position to observe said violation, to appear in municipal court to answer to the charge. It is the municipal court which has jurisdiction over such allegations, and it is not for this Court to determine the existence of violations or assess penalties for same.
Counsel shall prepare an order reflecting the Court's granting of a mutual restraining order and injunction as to all Plaintiffs and the Defendant. Sadly, there is no equitable alternative as it is beyond anyone's or any entity's power to attempt to eliminate the *Page 5 
vindictiveness, bias, incivility, intolerance, pettiness and rudeness that one individual chooses to exhibit towards a fellow citizen. As Samuel Johnson once observed, "when once the forms of civility are violated, there remains little hope of return to kindness or decency." *Page 1